THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, *v.* JOHN FINNIGAN and JAMES FINNIGAN, Appellees.

### APPEAL FROM LA SALLE.

Where parties suing in case, for damages for killing cattle, claim as joint owners, they should be held to reasonably strict proof of ownership.

Where it appears that animals fit for beef, are not killed, nor so injured, but that they are of value for food, it is the duty of the owner to dispose of them to the best advantage; he has no right to abandon them wantonly, and then claim their full value. The criterion of damages in such a case, is the value of the cattle as injured, and their value before the injury.

Although a locomotive with a train, may be operated by others under a contract, that does not release the company owning the property from liability.

THIS was an action in case for killing cattle, brought by appellees against appellant, Nov. 27th, 1857.

The amended declaration contains the following counts :

First count—That defendant was an incorporated company, operating a railroad for more than six months before the time when, etc.; that it was the duty of defendant to keep and maintain fences on sides of road, sufficient, etc.; that defendant negligently and carelessly omitted so to do; that the cattle of plaintiffs for that reason were upon said road, and the cars of said defendant then running on said road, then run upon said cattle and killed them. Damages claimed, $1,000.

Second and third counts in substance like the first, with this additional averment, that the cars of defendant were then and there so negligently, carelessly governed and operated, that by the mere carelessness and negligence of the agents and servants of defendant, the cars were driven against the cattle of plaintiffs, and they were thereby killed.

Plea, general issue.

Cause tried at September term, 1858.

Plaintiffs called as a witness, *P. Reiley*, who testified : I know the plaintiffs; they reside near Illinois Central Railroad; railroad runs across the premises; one steer and some other cattle which plaintiffs claimed were killed on the road. This was not in any town, city or village, nor at any crossing; steer was worth $10; I saw the steer beside the track, with three legs broken; it was not then dead; think it was about the last of September; a cow was killed in October next; she was worth $25; she was in Finnigan's possession; she had a fore and hind leg broke; she was alive and ten rods away from the track on the east side of it. There was a culvert there, and railroad track was twenty feet high above the place where the cow was; there was no fence on the road at that time; the road had been

in operation two years; cattle could not be kept off without a fence.

That steer was fat; worth $10; only had his hind legs broke; cow was fat; worth as much for beef as anything; can't swear that cattle were killed in the night; I saw them in the morning.

I saw the colt with three legs broke by the road-side a year ago; he was worth $90; this was near where the cattle were killed.

Finnigans live together; don't know which one owned the cow.

*Hugh Morgan* testified as follows: I saw a colt which was killed there in October last; its legs were broken; saw it dead two or three days afterward; this was about forty rods from plaintiffs' house; I saw the cars pass, and saw the colt on the track with other horses, and saw him in the ditch with his legs broken after cars had passed; road crosses the track about twenty rods from where colt was killed.

Both of the Finnigans claimed the colt; saw both of them ride him.

*Daniel Conway* testified, that James Finnigan came to get him to value two cattle near the track; valued them at $20 each, a cow and a steer; they were both dead; this was half a mile from plaintiffs' residence on the west side of railroad; no fence on the east and bad on the west side; Finnigan lived at next crossing; fence was necessary to keep cattle off; I valued the cattle at six cents a pound.

*George W. Armstrong,* called by defendant, testified that he had been dealing in cattle nine or ten years past; usually paid from $2 to $2.50 per hundred; under 1,000 pounds about $2; over, $2.50; a three-year-old heifer is worth from eighteen to twenty dollars; a steer, from twenty-two to twenty-five dollars.

*Isaac Hardy* testified, that he had been acquainted with the work of Illinois Central Railroad since the commencement of the same; Kieth & Snell were contractors on said road at that time; they had entire control of a construction train, and were running it past that point, and a lot of fat cattle were killed near where they were at work.

The defendant asked the court to instruct the jury as follows:

"If the jury believe, from the evidence, that Keith & Snell were at the time and place of the injury to said stock, operating and controlling a locomotive and cars upon said Illinois Central Railway track for their own use and benefit, and over which the Illinois Central Railroad Company had no control, then the jury must find for the defendant, unless they believe, from the evidence, that the injury to said stock was occasioned

by some other means than the engine or train so operated by said Kieth & Snell."

Which said instruction was refused, and defendant excepted.

The jury found for plaintiff, $127.50.

Defendant moved the court for a new trial, which the court overruled, and defendant excepted.

Errors assigned are:

1st. The court erred in refusing the said instruction asked by defendants.

2nd. The court erred in overruling the motion for a new trial.

3rd. The court erred in rendering judgment aforesaid in manner and form aforesaid.

B. C. COOK, for Appellant.

STRAIN & BALL, for Appellees.

BREESE, J. This is an action brought by two plaintiffs, declaring upon their joint ownership of the property killed. The declaration contains three counts. The first is for a liability arising out of neglect in fencing the road, whereby the plaintiff's cattle straying upon the road, were killed. The second and third counts aver negligence and carelessness in running the trains. There is no proof whatever in support of these counts, as the train was not seen to run over the cattle, and it is only from circumstances it is inferred they were injured and killed by the train.

The first objection is, that there is no proof in the record of a joint ownership of the property by the plaintiffs below. We have examined the evidence preserved in the record, and cannot find such proof. One of the witnesses states, one steer and some other cattle which they claimed, were killed on the road; the steer was worth ten dollars; saw the steer by the side of the track, with three legs broken, not dead; this was the last of September; a cow was killed some time in October, worth twenty-five dollars; she was in Finnigan's possession; she had a fore and hind leg broken; was alive; was ten rods away from the track; the steer was fat; worth ten dollars for beef; only had its legs broken; the cow was fat; worth as much for beef as anything; saw the colt, three legs broken, by the road side, a year ago; worth ninety dollars; don't know which Finnigan owned the cow.

Another witness stated he knew the colt and it was worth from ninety to one hundred dollars; both of the Finnigans claimed the colt; could not swear that he belonged to either of them.

In such cases as these, it is the duty of courts and juries to hold parties claiming damages for killing or injuring stock, to reasonably strict proof of ownership. The first witness states that the cow was in Finnigan's possession, of which one he does not say ; and so of the colt, the proof is that both of them claimed it. There is an absence of proof of a joint ownership such as they have declared on. There is no proof of negligence in running the train, and there was no proof that a fence was required by law to be made at the place where the animals were killed. The proof shows that the cow and steer were both fat and worth, one, ten dollars, and the other twenty dollars, for beef, and were good for beef, they having only been injured in the legs. We hold under such facts, that it was the duty of the owner to have disposed of them to the best advantage, if practicable. He should have made some effort to make them available, and had no right to abandon them wantonly, and then claim their full value. The company had a just claim on the owner to do so, and thus reduce as much as possible the damage and injury. The criterion of damages in this case is, the value of the cattle as injured, and their value before the injury. If, after the injury, they were as valuable for beef, as the proof shows, as before the injury, and the owner wantonly abandoned them, he ought not to recover their value. If one leaves the gate of another open, by which some slight injury is done the owner of the gate, the owner has no right to leave it open in order that he may thereby charge the delinquent party for any and all injury he may suffer thereby. He should shut the gate.

The instructions asked for by the defendant, were properly refused, for though Keith and Snell were operating the locomotive and cars under a contract with the company, that does not release the company from liability. *Ohio & Mississippi Railroad Company* v. *Dunbar*, 20 Ill. R. 623.

We think a new trial should have been awarded, and accordingly reverse the judgment and remand the cause for that purpose.

*Judgment reversed.*