# Georgia Pacific Railroad Co. *v.* Fullerton.

*Action against Railroad Company, for Injuries to Stock.*

1. *Statutory provisions as to liability of railroad company for injuries to cattle.*—Sections 1704–09 of the Code of 1876, as to the liability of railroad corporations for damages on account of live-stock killed or injured, have been superseded and repealed by the later statute now embraced in sections 1710–15.

2. *Measure of damages against railroad company, for injuries to cattle.* The measure of the plaintiff's damages, in an action against a railroad company on account of cattle killed, is not necessarily the value of the animal when alive, but the difference in value between the living animal and the dead carcass; and though he may abandon the carcass, when comparatively worthless, and recover the full value of the living animal, yet, if he converts it to his own use, or otherwise disposes of it, or if he might realize appreciable value for it by the exercise of reasonable diligence, the net amount of such value must be deducted.

3. *Same; interest.*—The plaintiff should be allowed interest on the amount of his damages, not from the commencement of his action, but from the time the injury was done.

APPEAL from the Circuit Court of Fayette.
Tried before the Hon. S. H. SPROTT.

This action was brought by John M. Fullerton against the appellant, a corporation doing business in this State, to recover damages for the loss of a cow, which was alleged to have been killed by the negligence of the defendant's servants; and was commenced in a justice's court, on the 24th January, 1885. In the Circuit Court, on appeal, a trial was had on issue joined on the pleas of not guilty, set-off, and recoupment. The bill of exceptions purports to set out "substantially all the evidence" in the case. "The plaintiff's evidence tended to show that the cow, which was his property, was killed by the defendant's railway train, on the 27th September, 1884, at or near the place mentioned in the complaint; and that the animal was worth $21. It was shown, on cross-examination of plaintiff's witnesses, that the animal was a young cow, about four years old, fat and in good condition, suitable for beef, and as beef worth in the market at that time $21; that plaintiff resided only a short distance from the place of the accident, and was informed of it the same evening, within two or three hours after it occurred; that he had the animal skinned, the hide being worth in the market one dollar, but did not make use of the carcass of the animal in any way." One Crowley was afterwards examined as a witness for the plaintiff, "whose testimony tended to show that he was, at the time of the accident, within a short distance of the place where the cow was knocked from the track by the defendant's train of cars on one Saturday evening; that when he saw the cow, both of her hind legs were broken; that he afterwards went to the plaintiff's house, about one mile distant, and found him at home sick, and unable to leave the house, when informed of his cow being crippled; that defendant's agents, on the Monday following, had the cow knocked in the head and killed, and that she was not at that time fit for beef."

It was proved, also, that the accident occurred on a curve in the defendant's road, in a cut where the embankment on each side was about five feet high. The engineer of the train, who was examined as a witness for the defendant, testified that the train was running, at the time of the accident, at the rate of fifteen miles per hour, on a down grade; that the cow, when he first discovered her, was not more than twenty-five or thirty yards ahead of the engine, and was attempting to climb the embankment, but fell back across the track, before he could stop the train, or do more than sound the cattle-alarm, which he did. He testified, also, "that the track of the road, at the place of the accident, was not open to view in a straight line for more than one hundred yards, owing to the undergrowth, curve and embankment;" and that it was impossible to avoid the accident, or to stop the train, after he first saw the cow,

"as he could not stop the train, on a grade like that, within less than one hundred and fifty or two hundred yards." A witness for the plaintiff testified, on the other hand, "that there was an open view on the track for two hundred, or two hundred and fifty yards, from the point where the cow was struck, in the direction from which the train approached; and that an object might have been seen by the engineer at that distance, if he had been keeping a close look-out." Several witnesses for the plaintiff testified, also, that they saw tracks on the road at the place of the accident, tending to show that the cow had been running on the track of the road for fifty yards before she was struck.

The defendant asked the following charges to the jury: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe, from the evidence, that the animal killed was a young cow, fat and in good condition, and worth $21 as beef; and that the plaintiff was informed of the accident on the same evening, and could by reasonable diligence have dressed and used the animal for beef, but neglected and failed to do so; then the value of the animal as beef should be allowed as a set-off, or in recoupment of damages." (3.) "If the jury believe, from the evidence, that the animal killed was worth $21 as beef, and was plaintiff's property after it was killed; and that it could have been sold for that sum, and was worth that (or any other) sum to him; or that he could have made such reasonable use or disposition of the animal as would have proportionately diminished the damages,— then the amount she was so worth as beef must be deducted from her value as a milch cow or otherwise." The court refused each of these charges as asked, and the defendant excepted to the refusal of each.

The court instructed the jury, among other things, "that if they should find in favor of the plaintiff, the measure of his damages would be the value of the cow at the time of the killing, and their verdict should be for that amount, with interest from that time up to the present." To this charge, also, the defendant excepted.

The charge given, and the refusal of the charges asked, are now assigned as error.

McGuire & Collier, for the appellant.—The plaintiff was only entitled to compensation to the extent of the injury which he had received; and in estimating his injury, the value of the hide, and also the value of the carcass as beef, though it may have been lost by his own negligence, should be deducted from the value of the living animal.—Thompson on Negligence, 539; *R. & D. Railroad Co. v. Roberts*, 88 N. C. 56; *Railroad*

[Georgia Pacific Railroad Co. v. Fullerton.]

*Co. v. 'Finnegan*, 21 Ill. 646; *Burton v. Railroad Co.*, 84 N. C. 102; *Jackson v. Railroad Co.*, 74 Mo. 526; *Dean v. Railroad Co.*, 43 Wisc. 305; 13 Amer. & Eng. Railway Cases, 564; 20 *Ib.* 473. It is submitted, also, that there was no material discrepancy·in the testimony, and the general charge asked should have been given.

NeSmith & Sanford, *contra*.—(1.) The first charge asked was properly refused.—*King v. Pope*, 28 Ala. 600; *Skains & Lewis v. State*, 21 Ala. 218; *Edgar v. McArn*, 22 Ala. 796; 1 Brick. Digest, 344, § 135. (2.) The proper measure of damages, under the statute, is the full value of the property destroyed by the negligence, or other unlawful act of the defendant's servants.—Code, § 1700. No deduction can be claimed in this case, even if the rule be otherwise, because it is shown that, at the time of the injury, the plaintiff was unable, from sickness, to do any thing with the carcass.

SOMERVILLE, J.—The point most pressed on us in this case relates to the proper measure of damages where live stock or cattle belonging to the plaintiff has been negligently *killed* by the locomotive or cars of a defendant railroad company. There would be no room for argument about the matter, if section 1704, of the Code of 1876, was unrepealed and still in force; for the measure of damages there declared is the value of the stock if killed, and the damage thereto if injured. But sections 1704 to 1709 of the Code appear to have been superceded and repealed by the act of February 3, 1877, now embodied in sections 1710 to 1715 of the same Code.—*Zeigler v. S. & N. Railroad Co.*, 58 Ala. 594; *S. & N. Ala. Railroad Co. v. Morris*, 65 Ala. 193. The repeal of section 1704 leaves the question of damages to be governed by section 1700, which declares, that "a railroad company is liable *for all damages* done to persons, stock, or other property," resulting from a failure to comply with the statute, or from any other negligence on the part of the road or its agents. The value of the stock killed is nowhere else declared to be the absolute criterion of the plaintiff's damages, but may be looked to for the purpose of determining the jurisdiction of the court assuming to take cognizance of the subject-matter.—Code, 1876, §§ 1711, 1714. On the contrary, the thing intended to be proved upon the trial is elsewhere reiterated to be "the *damage* or injury to such stock or cattle."—Code, § 1712.

If the stock or cattle be killed, it does not follow that, in every case, the necessary measure of the plaintiff's recovery must be the value of such stock. Such·value is undoubtedly the *prima facie* measure of damages, and the burden of proof

may be thrown on the defendant to overcome this presumption, when once it is made to arise upon proved facts. But, upon every sound principle, the damage suffered by the plaintiff is the difference in value between the cattle when alive, and the carcass of the animal when dead.—*Illinois Cent. R. R. Co. v. Finnegan*, 21 Ill. 646. The dead animal unquestionably belongs to the plaintiff, and not to the railroad company, by whose negligence it was killed. The tort committed does not operate to divest the title of the property, so as to transfer it to the wrong-doer. If the carcass, being of any pecuniary value, should be converted to the use of the railroad, an action of trover would lie for it in favor of the owner. The carcass, it may be, is most frequently worth nothing to the owner; and the facts must be peculiar which would overcome this presumption. It is often bruised and mangled, and unfit for any use. Its small value, and distance from any available point, may render its utilization profitless. There may be no ready market for it, even if possessing some value. In such and like cases, we apprehend, the owner may abandon the carcass, and claim the reasonable value of the animal before it was killed, as the proper measure of his compensation.—Thompson on Negligence, p. 539, § 31; *Rockford R. R. Co. v. Lynch*, 67 Ill. 149; 3 Wood's Railway Law, p. 1549, § 423.

But, where the owner assumes dominion over the property, after it is killed, and converts it to his own use, or gives it away to another, its net value, if anything appreciable, must be deducted in estimating the plaintiff's damages.—*Case v. St. Louis R. R. Co.*, 75 Mo. 668; s. c., 13 Amer. & Eng. R. R. Cases, 546. So, where it is made to appear by the defendant that the carcass of the dead animal is valuable for beef, or other purposes, and could have been disposed of by the plaintiff by the exercise of reasonable diligence—by which we mean such diligence as would or should have been exercised by a person of ordinary prudence, who was situated in like circumstances with the plaintiff—then the plaintiff can not wantonly abandon the carcass, and, by refusing to perform his clear duty in the premises, aggravate the amount of his recovery. It is the duty of one injured by the act of another, to use all reasonable and convenient care to diminish the amount of his own pecuniary damage.—1 Sedgw. on Dam. (7th Ed.) pp. 56, 166, n. The case of *Illinois Cent. R. R. Co. v. Finnegan*, 21 Ill. 646, cited by the appellant's counsel, is a strong and direct authority in support of this view, as applicable to a case like the present. The same principle is announced in *Roberts v. Richmond & Danville R. R. Co.*, 88 N. C. 560 (s. c., 20 Amer. & Eng. R. R. Cas. 473), where the action was for killing cattle. The court said: "The cow, as the plaintiff testified, was worth from

[Georgia Pacific Railroad Co. v. Fullerton.]

eighteen to twenty dollars for beef, and was his property still. If she could have been sold for that sum, or was worth it to the owner, he should have made such reasonable use or disposition of the cow as would have proportionally diminished the damages." There are several rulings in Indiana, holding the value of the animal killed to be the absolute measure of the owner's damages, but they are based upon a statute expressly declaring such a rule.—*Ohio & Miss. R. R. Co. v. Hays*, 35 Ind. 173. The doctrine which we have stated above is believed to be better sustained by reason and authority.—3 Wood's Railway Law, p. 1569, § 423.

In estimating, in a proper case, what amount should be deducted for the value of the carcass, in order to correctly assess the plaintiff's damages, it is obvious that such deduction should be for the net, and not for the gross value of the carcass, where it has any such value. This net value is the actual benefit derived, or what was or might have probably been realized from its sale or use, after making reasonable allowance for the expense or time and trouble required in effecting a sale.—*Dean v. Chicago & N. Railway Co.*, 43 Wis. 305.

This deduction is made, not strictly as a set-off, or by way of recoupment to the plaintiff's claim; but it is a restriction entering into the rule of law, by which the jury are to be governed in their calculation or assessment of the damages suffered by the plaintiff.

When a recovery is had in cases of this nature, the jury should allow interest on the amount ascertained to be due the plaintiff, from the date of the loss or killing to the time of trial, and not merely from the commencement of the action, as held in some of the States.—*Ala. Gt. S. R. R. Co. v. McAlpine*, 75 Ala. 113.

The rulings of the court were opposed to these views, and were erroneous.

There was sufficient conflict in the evidence, in our judgment, to authorize a refusal by the court to give the general charge requested by the plaintiff.

The judgment is reversed, and the cause remanded.