(77 South. 49)

SOUTHERN RY. CO. v. PRUETT.
(7 Div. 900.)

(Supreme Court of Alabama. Nov. 15, 1917.)

1. CARRIERS ☞339—INJURIES TO PASSENGERS —PROXIMATE CAUSE.
Common carriers are responsible to their passengers as for injuries and damages suffered, proximately resulting from the negligence of their agents while acting within the line and scope of their authority; but a carrier is not so liable as for injuries or damages suffered by the passengers if such proximately result from the negligence or any willful act of the passenger.

2. CARRIERS ☞265—PASSENGERS—STOPPING AT STATIONS.
Railroads are not required to stop at all times and at all stations for passengers, but may operate through trains stopping at only large or important towns or stations.

3. CARRIERS ☞265—PASSENGERS—DUTY OF PASSENGER BOARDING TRAIN.
Passengers before boarding a train should inquire whether it stops at their desired destination.

4. CARRIERS ☞265—PASSENGERS—TAKING WRONG TRAIN.
Where a passenger, making proper inquiry, is misled by acts or statements of the railroad or its agents into taking the wrong train, his remedy is to leave the train and seek other transportation and recover of the railroad damages sustained.

5. CARRIERS ☞278(1) — PASSENGERS—QUESTION FOR JURY.
Whether passenger made inquiries as to whether the train she took was the right train to her destination, and was misinformed by railroad's agents, was for the jury in action for damages from being negligently directed to the wrong train.

6. TRIAL ☞260(1) — INSTRUCTIONS — REQUESTS.
Refusal of charges requested by defendant was not reversible error, where none of the refused charges were more favorable to defendant than a charge which was given on the phase of the case covered by refused charges.

7. CARRIERS ☞278(1) — PASSENGERS — QUESTIONS FOR JURY.
In an action by passenger for damages from being negligently directed to take the wrong train, whether a maid at the station assisting female passengers on and off trains was an agent of the railroad for directing passengers to trains, was for the jury.

8. DAMAGES ☞62(2) — MITIGATION — SELF-INFLICTED DAMAGES.
In action by passenger for damages from being directed to take the wrong train, in consequence of which she was compelled to remain all night in a town not her home, she could not recover for the inconvenience or damages suffered from remaining all night in the depot where she declined offers of railroad's agents to take her to a hotel or send her home in an automobile, since such damages were self-inflicted.

9. CARRIERS ☞278(1) — PASSENGERS — QUESTIONS FOR JURY.
In an action for damages by a female passenger, compelled, by misdirection of railroad as to trains, to remain all night in a town not her home, whether her illness resulted from her sitting up all night in the depot after she refused railroad's offer to take her to a hotel or send her home in an automobile was for the jury.

Appeal from City Court of Anniston; Thomas W. Coleman, Jr., Judge.

Action by Mrs. W. A. Pruett against the Southern Railway Company. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under Act April 18, 1911, p. 449, § 6. Reversed and remanded.

The case is stated in four counts. The first alleges that she was negligently informed by defendant's waiting woman that the west-bound train was the proper train for her to take. The second alleges that defendant's flagman negligently failed to inquire her destination, thereby negligently setting her aboard the wrong train. The third count alleges that after she discovered that she was on the wrong train defendant's employés refused to stop said train. The fourth is practically the same as the third. Plaintiff is a white woman about 25 years old, who went to Anniston from Jacksonville, Ala., and in attempting to return to Jacksonville that afternoon boarded the Southern Rail-

way train going west instead of her train going to Jacksonville, both trains reaching the station at the same time, and both being on time. Plaintiff testified that she had a conversation with the colored maid at the station who waits on the ladies, and that this colored maid told her in reply to a question that the train she took was her train, and that as she boarded the train, a man in uniform was standing near, of whom she asked if that was a place to get on, and he replied, "Yes," and told her to turn to the right; that when the conductor came to take up her ticket, she discovered she was on the wrong train, and notified the conductor and flagman both to stop the train and let her off, but that they refused, and carried her on to Pell City, where she disembarked, and after an hour or two boarded the train coming back to Anniston, riding on a pass issued to her by the conductor of the west-bound train. She reached Anniston about 10 o'clock at night, and spent the night in the depot, and went on to Jacksonville the next morning. She testified the depot was not well heated. and that she suffered from cold during the night; that she had been well and strong before, but had not been well since that night. The maid at the depot testified that she had been employed by the Louisville & Nashville, and had nothing to do with the Southern Railway. She testified further that the train to Jacksonville was a short local train with a small engine due at 3:55 p. m., while the other train was a long train with a large engine due at the same time, and that the trains were easily distinguished by any one who knew anything about them. The members of the crew of the train testified that they knew nothing about a passenger boarding their train to Jacksonville, until the conductor went to take up the tickets; that the west-bound train was a Birmingham special, and not scheduled to stop at any point between there and Pell City. The conductor on the east-bound train which brought plaintiff back to Anniston testified that he gave plaintiff a dollar and told her to use it either for hotel fare or taxi fare back to Jacksonville; that he introduced plaintiff to an employé of the Southern Railway Company who lived at Anniston; that he knew him to be a gentleman who would look after her in Anniston, and escort her to any place she desired to go. It is further shown that this train arrived at 7:45 p. m., and left at 7:48. It is without dispute that there were at least four respectable hotels in the city of Anniston at which plaintiff could have obtained lodgings for the night at prices ranging from 50 cents to a dollar; that one of these was just across the street from the depot; and that street cars ran from the depot to the hotels at regular intervals.

Knox, Acker, Dixon & Sterne, of Anniston, for appellant. P. F. Wharton and T. C. Sensabaugh, both of Anniston, for appellee.

MAYFIELD, J. The case made is well stated in brief by counsel for appellant. The reporter will set out the appropriate matter from the brief to constitute a statement of the facts.

[1] Common carriers are responsible to their passengers as for injuries and damages suffered, proximately resulting from the negligence of the agents of the carrier while acting within the line and scope of their authority; but the carrier is not so liable as for injuries or damages suffered by the passengers, if such proximately result from the negligence or any willful act of the passenger. Notwithstanding the high degree of care which the law imposes upon common carriers, it does not hold them liable to passengers as for injuries and damages which are self-inflicted by the passengers. The maxim, "No one shall profit by his own wrong," finds illumination by such cases.

[2-4] Railroads, the usual common carriers in this country, are not required by law to stop at times and at all stations for the reception or the emission of passengers. It is therefore common knowledge that railroads may operate through trains which stop only at large or important towns and stations. Passengers are therefore under the duty to inquire and ascertain whether or not a particular train upon which they desire to travel stops at their desired destination; and if without such inquiry they board a train which does not stop at the desired station, they have no right to require the train to make their desired stop. Their misfortune is the result of their own negligence. But they may ride to the station nearest to their destination, at which the train does stop, paying the proper fare to such station of scheduled stop. If, however, the passenger does inquire of the proper agent for information as to whether or not the train he boards stops at his desired destination, and by such information he is misled to take the wrong train, he is not without remedy, because he is then not at fault, and may recover the damages suffered in consequence of the negligence or mistake of the carrier's agent. Mr. Hutchinson thus states the passenger's remedy in such cases:

"Where, however, he is misled by the acts or statements of the company or its agents into taking a train which does not stop at his destination, he is not without remedy. He cannot, indeed, insist that the conductor shall violate his instructions and stop the train at the place in question, nor can he insist upon remaining on the train after learning that it will not stop. His remedy in such a case is to leave the train and seek transportation by some other means, and then to recover of the company damages for the injury he has sustained by its breach of contract. He has not the right, however, though erroneous notions in this regard seem very generally to prevail, to aggravate his injury by refusing to leave and making the application of force necessary for his removal. He is now wrongfully upon the train, and whatever force is reasonably necessary and proper to eject him he himself invites, and he cannot recover damages for an injury thereby sustained, though

he is still entitled to protection against unnecessary and wanton violence." Carriers, vol. 2 (3d Ed.) pp. 1228, 1229, § 1060.

These rules have been reaffirmed by this court in the cases of Louisville & Nashville Railroad Co. v. Maxwell, 190 Ala. 47, 66 South. 669; McGhee v. Reynolds, 117 Ala. 413, 23 South. 68; Alabama Great Southern Railroad Co. v. Carmichael, 90 Ala. 19, 8 South. 87, 9 L. R. A. 388; Manning v. Louisville & Nashville Railroad Co., 95 Ala. 392, 11 South. 8, 16 L. R. A. 55, 36 Am. St. Rep. 225; Louisville & Nashville Railroad Co. v. Cornelius, 6 Ala. App. 386, 60 South. 740. This court, in Carmichael's Case, supra (90 Ala. 24, 8 South. 89 [9 L. R. A. 388]), speaking through Stone, C. J., said:

"Railroads have the undoubted power to prescribe rules for the running of their trains. They not only have the power, but their highest duty demands that they exercise it. On this depend the safety of passengers, the safety of trains, and the preservation of vast property interests. The immense power and capacity of railroads for evil, as well as for good, render it of supreme importance that regulations be observed, and that trains run strictly on schedule time, and according to schedule requirements. The horrible railroad collisions and disasters, which fill the news columns, are a tremendous warning against violation or disregard of orders by employés having charge of trains. Conductors of railroad trains are but agents, authorized, and only authorized, to run their trains according to prescribed rules; and if it were necessary to the decision of this case, there are many decisions which hold that persons dealing with them are bound to take notice, or inquire and inform themselves, of the extent of their powers. Such is the general rule, when one deals with an agent, not of the class called general agents. Cummins v. Beaumont, 68 Ala. 204; Herring v. Skaggs, 62 Ala. 180 [34 Am. Rep. 4]."

[5] Plaintiff claims, however, that she did apply to plaintiff's agent as to whether or not the train she boarded would stop at her desired destination, and was informed that it would. She says that the maid in the waiting room at the depot at Anniston, where she boarded the train, told her that it was the proper train for her to board, and that some agent of the defendant, who was at the steps when she boarded the train, told her that it was her train or allowed her to board it after knowledge of her destination. This was denied by the agents of the defendant. So these were questions for the jury, and the trial court properly submitted them to the jury; and we find no reversible error in the rulings on the evidence in this respect, or in the instructions given, or in the refusal of other instructions, as to these matters.

[6] Several of the defendant's requested charges on these phases of the case could have been given without error, but we find no reversible error in their refusal. The court, at the request of the defendant, charged the jury as follows:

"If the plaintiff got on the wrong train by her own mistake, and the mistake was not known to the employés in charge of the train until after the train had left Anniston, the plaintiff is not entitled to recover."

This was certainly as favorable a charge on this phase of the case as defendant had a right to have, and none refused to defendant, on this phase, was more favorable to defendant than the one given. If the plaintiff's evidence on this feature of the case was true —and the jury evidently found that it was— plaintiff was not at fault in boarding the train at the time and on the occasion in question.

The leading case in this country on the subject of passengers following the advice or directions of agents of the carrier is that of S. & N. A. R. R. Co. v. Huffman, 76 Ala. 492, 52 Am. Rep. 349. It has been often followed by this court and others. It reviewed many, if not all, of the authorities on the subject up to that date. The rule is well stated in the third headnote in the report of that case:

"Cases cited, in which 'it was ruled that the railroad corporation was liable for the erroneous advice and direction given by its agents in charge' and the court adds, 'We think the rule a good one, and will adopt it.'"

[7] The last case we find on the subject is that of Simmons v. Lusk (Ark.) 194 S. W. 11, which cites the late cases. While we find no case in point as to whether or not a maid at a station, who assists female passengers on and off trains, is the agent of the carrier for directing such passengers to the proper trains, we hold that under the evidence in this case, the question whether or not the maid in this instance was the defendant's agent for this purpose was for the jury. The court could not say, as matter of law, whether she was, or was not. If it be conceded that the defendant was at fault in carrying plaintiff to Pell City, instead of to Jacksonville, yet the evidence is without dispute that the defendant, through its agents, did everything it could do to make amends for the error. The evidence shows without dispute that plaintiff's staying in the depot at Anniston all night, instead of going to a hotel, or going home in an automobile, was of her own voluntary choice. Defendant's agent gave her the money with which to pay for her lodging at a hotel, which she accepted, and then refused to go to the hotel, though the agent offered to accompany her. She had lived in Anniston, was more or less acquainted with the city, had that day been there shopping, and had friends and acquaintances stopping at one of the hotels, only a few blocks from the depot. Street cars left the depot frequently and passed very near the hotels. There were, moreover, other modes of transportation commonly used by the public and travelers going from the depot to the hotels, all of which facts were known to the plaintiff; and the agents of the defendant offered her all needed assistance in getting to a hotel, and offered to send her home in an automobile, all of which offers she declined, and voluntarily chose to spend the night at the depot.

[8, 9] The inconvenience or damages she

suffered in consequence of remaining in the depot all night instead of going to a hotel or going to her home in an automobile were self-inflicted, and therefore she ought not to recover in this action, even under her own testimony, and the trial court should have given the instructions, to such effect, requested by the defendant. If her illness was the result of sitting up all night in the depot, and it would not have resulted but for her so spending the night there, then she was not entitled to recover any damages as for illness. This, however, was a question for the jury.

"It is the duty of one injured by the act of another to use all reasonable and convenient care to diminish the amount of his own pecuniary damage." Georgia Pac. R. Co. v. Fullerton, 79 Ala. 302; 1 Sedgw. on Damages, 56; Memphis & C. R. Co. v. Hembree, 84 Ala. 186, 4 South. 392; Louisville & N. R. Co. v. Hine, 121 Ala. 239, 25 South. 857; Werten v. Koosa, 169 Ala. 264, 53 South. 98.

The rule applicable to this phase of the case is well stated by Mr. Hutchinson in his work on Carriers (3d Ed.) vol. 3, pp. 1734, 1735, § 1431, where many cases are cited, as follows:

"Where the passenger has sustained an injury at the hands of the carrier, it is his duty to endeavor to make his damage as light as possible; and for those consequences of the carrier's wrongful act which the passenger in the exercise of reasonable care and prudence could have avoided, the carrier will not be liable. This rule was applied where a passenger, who had been injured, continued his journey without first securing the aid of a competent physician or surgeon in consequence of which his injury was aggravated; where a passenger, being denied passage in a chair car, left the train altogether and sought damages for the delay when he might have gone on in another car; where a passenger in a sleeping car refused to continue his journey in a day coach, the sleeping car having been turned back by the carrier's orders just before the passenger's destination was reached; where a passenger, after having been wrongfully ejected, refused to accept the conductor's invitation to resume his journey, and then claimed damages for the delay; where a woman carried past her station refused assistance in getting back and walked a longer distance than was necessary, and then sought damages for the trouble and inconvenience so incurred; where a woman who had likewise been carried beyond her destination walked back on a very cold night and thereby suffered injury, when shelter and accommodation could have been had until morning; where a passenger who was refused transportation made no effort to secure other means to proceed on his journey, but needlessly remained at an intermediate station, and then sought to recover damages for the delay," etc.

The same rules have been announced by this court in passenger cases involving the question of mitigation of damages. In the case of Louisville & Nashville Railroad Co. v. Hine, 121 Ala. 234, 25 South. 857, it is said:

"While by refusing such offer the plaintiff did not forfeit his right of action for the ejection he could not be allowed to aggravate his injury or to enhance his damages by a voluntary abandonment of the trip. On the contrary, it was his legal duty to use ordinary care to make his damage no greater than was necessary and to adopt reasonable and convenient means to that end, and the application of that rule would certainly have required of plaintiff his return to the train if the accomplishment of the journey

was important. Ga. Pac. R. Co. v. Fullerton, 79 Ala. 398; 5 Am. & Eng. Ency. Law, 693; Pullman Palace Car Co. v. Bluhm, 109 Ill. 20, 50 Am. Rep. 601; Sedg. on Dam. (7th Ed.) 56."

This rule must be applied here. Plaintiff could not be allowed to enhance her damages by her refusal of all reasonable offers, made by the defendant, to the end of rectifying its wrong and making her injury and inconvenience as small as possible. It is undisputed that defendant's agent gave her money to pay for her lodging at a hotel; that she accepted the money, deciding so to use it, but finally chose voluntarily to remain all night in the depot. This inconvenience, and its consequent injuries and damages, if any there were, were certainly self-inflicted. They were not the proximate result of the defendant's wrongs, and as for them the defendant is not liable. For this error the case must be reversed. The other questions may not arise on another trial.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.