[Ala. Great Southern Railroad Co. v. Sellers] .

93    9
93    310

93    9
97    340
97    581

93    9
100   47
101   266

93    9
124   410
125   490

93    9
134   332
93    9
141   342

93    9
143   286

# Ala. Great Southern Railroad Co. *v.* Sellers.

### *Action for Damages by Passenger.*

1. *Exemplary damages; circumstances of aggravation.*—In an action by a passenger against a railroad company, evidence showing that the plaintiff was carried several hundred yards beyond the station at which she was to alight, and, on the conductor's refusal to move the train back, was compelled to alight and walk back through a drenching rain, having a baby in her arms, and incumbered with a valise, authorizes the jury to award exemplary damages.

2. *Same; charges limiting right of recovery.*—Where the complaint not only avers the failure to stop at the station in the first instance, but also the refusal of the conductor to back the train to the station, and the consequent necessity, enforced by his orders, for plaintiff to alight and walk back, charges asked, limiting her right of recovery to damages sustained in consequence of the failure to stop in the first instance, are properly refused.

3. *Same; evidence in aggravation of damages.*—In such case, the fact that plaintiff had a baby in her arms is relevant and admissible as evidence in aggravation of damages, whether regard be had to the baby itself, her natural solicitude for it, or only as one of the impediments which prevented or hindered her use of an umbrella as a protection against the rain.

4. *Negligence, and willful wrong; variance.*—Under a count which alleges that plaintiff was "put off" by the conductor, or "compelled to get off," it is not necessary to prove that she was ejected by force; a recovery may be had on evidence showing that, having been carried several hundred yards beyond the station, the conductor refused to move the train back, and ordered her to get off, and that she then alighted to avoid being carried further.

5. *Travellers on freight or passenger trains; abstract charges.*—Whether a traveller is carried on a freight train or on a regular passenger train, the duty of the carrier to set him down at the proper station is the same; and when the action is brought to recover damages for personal injuries sustained by plaintiff, while travelling on a freight train, from being carried beyond the station and there set down in a heavy rain, charges based on the difference between the two kinds of trains, in the "comforts and conveniences usually furnished passengers," are abstract, and therefore properly refused.

6. *Actual damages as predicate for exemplary.*—The jury may award exemplary damages for circumstances of aggravation, or willful wrong, although no actual damages are proved.

7. *Argumentative charges*, directing the jury to look to certain facts as tending towards certain conclusions, are properly refused.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This action was brought by Mrs. Nancy M. Sellers and her husband, to recover damages for personal injuries sustained by her while travelling as a passenger on one of the defendant's

trains of cars; and was commenced on the 28th September, 1883. The death of the husband was suggested pending the suit, and the cause was prosecuted to judgment on verdict in favor of Mrs. Sellers, November 9th, 1889, for $500. The complaint contained three counts, each of which averred that, on the 24th August, 1883, Mrs. Sellers paid for a ticket on one of the defendant's freight trains, with caboose attached, entitling her to transportation from Jonesboro to Wheeling, stations on the defendant's road about two miles apart, whereby defendant agreed and became bound to carry her to Wheeling, and to allow her a reasonable time to alight from the cars at that place; and claimed damages for negligence and breach of duty as follows : (*1st Count.*) "Plaintiffs aver that defendant failed to allow said Nancy a reasonable time to alight from said train at Wheeling, and did not stop said train at Wheeling, but negligently and wrongfully ran its said train by said station, and stopped it two hundred yards beyond, at which place, though a heavy and drenching rain was falling, she was put off the said train by the conductor, getting thoroughly wet, causing her great inconvenience, and greatly injuring her health permanently." (*2d Count.*) "Plaintiffs aver that defendant failed and neglected to stop said train at Wheeling, but wrongfully and negligently ran said train two hundred yards beyond said station, where it stopped, and regardless of its duty to allow said Nancy a reasonable time to alight from the train at said station, did not run said train back to said station; whereupon said Nancy was compelled by the conductor of said train to alight from it two hundred yards beyond said station, in a hard and drenching rain, thereby causing her great inconvenience," injuring her health, &c. (*3d Count.*) "Plaintiffs aver that defendant, regardless of its duty to stop said train at Wheeling, and to allow said Nancy a reasonable time in which to alight from it, did not stop said train at said station, but wrongfully and negligently ran by said station, and did not stop until said train was two hundred yards beyond said station, and, regardless of its duty to allow said Nancy a reasonable time in which to alight at said station, would not run said train back to said station, and allow said Nancy to alight therefrom at said station, although earnestly requested by her to do so, thereby wrongfully causing her, although a heavy rain was falling, to alight from said train two hundred yards beyond said station, to her great inconvenience," &c. The only plea was the general issue.

On the trial, Mrs. Sellers testified as a witness for herself, and stated that the train on which she was travelling, instead of stopping at the station house at Wheeling, went three hun-

dred yards or more beyond; "that she asked the conductor if he could carry her back to the station, but he pretended not to hear her, and said to get out of the train; that several persons got off when the train stopped, and she also did what the conductor told her to do; that the conductor helped her off; that it was raining at the time, and commenced to rain very hard; that she had an umbrella, but could not use it, as the wind was blowing hard, and she had her baby and a valise;" that her husband, who was waiting for her at the station, met her about half way, and walked back with her; that she remained at the station until the rain stopped, without an opportunity to change her clothes; and that a severe illness ensued on the next day, which lasted several months, and required medical attendance. The defendant objected and excepted to the admission of plaintiff's statement about her baby. The conductor of the train testified, on behalf of the defendant, that he could not stop the train at the station, because it was on a down grade, and the rain had made the track slippery; and that he was afraid to back the train, because the passengers commenced to alight from the rear of the caboose, and there was danger of injuring them. The station house at Wheeling was built and owned by the Woodward Iron Company, but plaintiff's witnesses testified that it was used by passengers on defendant's road.

The court gave the following charges to the jury, the defendant excepting to each of them: (1.) "If there was a regular stopping place at Wheeling, and the defendant ran its train by that place by reason of any mismanagement of the train, then it was a duty defendant owed to plaintiff to take her back to the station and let her get off." (2.) "Plaintiff claims that she is entitled to damages beyond actual damages; and the question is left to the jury to decide, under all the circumstances of the case, whether there is anything in it to justify punitive or vindictive damages." (3.) "The complaint avers that the defendant put off or compelled plaintiff to leave the train; but this does not necessarily equal or mean the application of force to remove her from the train."

The defendant requested the following charges in writing, and duly excepted to the refusal of each of them: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "Under the evidence in this case, the plaintiff is not entitled to recover any exemplary or punitive damages." (3.) "Under the evidence in this case, the plaintiff is not entitled to recover any damages, unless the jury should find that she is entitled to compensatory damages." (4.) "Passengers who ask and receive transportation as passengers on freight trains, are not entitled to the comforts and conveniences usually

[Ala. Great Southern Railroad Co. v. Sellers.]

furnished on passenger trains; and in accepting such trans-
portation, after having applied for it, they are charged with
notice of the above." (5.) "If the jury believe the evidence,
the plaintiff is not entitled to recover under the first count of
the complaint." (6.) "If the jury believe the evidence, the
plaintiff is not entitled to recover under the second count."
(8.) "If the jury believe from the evidence that, when the
train was pulled by the usual stopping place at Wheeling,
plaintiff got off the train, and was not put off, nor compelled
to get off, but left the train of her own free will; then there
can be no recovery under the first and second counts of the
complaint, and the jury must so find." (9.) "If the jury be-
lieve from the evidence that the plaintiff was carried past the
point at which she should have been allowed to alight, and
that she subsequently left the train of her own accord, and
without bringing home notice to the conductor that she desired
or demanded to be carried back to said place; then the jury
can consider said testimony as showing that she waived her
right to be carried back there, and they must so find."
(10.) "In determining whether defendant was guilty of neg-
ligence in pulling beyond the point of the railroad opposite
the house where passengers were in the habit of getting off
the cars, the jury may take into consideration, in connection
with all the other evidence in the case, the character of the
train on which plaintiff was riding, the number of cars it was
pulling, and what efforts were employed to stop the train; and
if the jury, from all the evidence in the case, are not reason-
ably satisfied that the defendant was guilty of negligence in
passing the alleged station, then their verdict must be for the
defendant." (11.) "If the jury believe from the evidence
that plaintiff is entitled to recover in this case, and further be-
lieve from the evidence that she could have been cured of her
illness within ten days from the time she was afflicted, but
failed to take proper steps to have herself cured; then the jury
should allow her no damages for any sickness or suffering be-
yond the ten days." (12.) "The cause of action laid in the
complaint is the wrongful and negligent carrying plaintiff be-
yond the station, and *for not* [?] refusing to carry her back to
the station after the train had passed it, and the only consid-
eration the jury should give the refusal to carry her back to
the station, if they are satisfied that defendant refused to carry
her back, is in estimating the damages they will allow her, if
they conclude from the evidence that she is entitled to damages.
(13.) "If the jury believe from the evidence that plaintiff is
entitled to recover any damages, then, under the evidence in
the case, they can only allow her actual damages—that is,

[Ala. Great Southern Railroad Co. v. Sellers.]

such damages as directly arose to her from the injury complained of; and they can not allow her any damages for physician's bills, cost of her cure, or loss of time because of her sickness."

The rulings on evidence, the charges given, and the refusal of the several charges asked, are assigned as error.

WOOD & WOOD, for appellant.

HEWITT, WALKER & PORTER, *contra*.

(No briefs on file, except on an application for rehearing on a point which is not noticed in the opinion of the court.)

McCLELLAN, J.—The inquiry of chief importance in this case is, whether there was any testimony adduced, which, if believed, would have authorized the imposition of exemplary damages. We think there was such testimony. The plaintiff (appellee here) testified in her own behalf, that she purchased a ticket entitling her to transportation on a freight train of the defendant from Jonesboro to Wheeling, stations on defendant's road about two miles apart, and took passage on such train at Jonesboro; that at Wheeling there was a house used as a station-house by all passengers to and from that point over defendant's line, and at which defendant's trains carrying passengers were wont to stop for the purpose of receiving and discharging passengers; that on the occasion in question the train was not stopped at said station, but proceeded from two hundred to four hundred yards beyond it; that it was raining at the time; that plaintiff requested the conductor to move the train back to the house, but he pretended not to hear, and told plaintiff she must get off; that the rain increased and was falling heavily, and a high wind was prevailing when she did get off; that she had a young baby in her arms, and was otherwise incumbered with a valise; that because of these impediments she could not efficiently use an umbrella which she had; that she alighted in obedience to the direction of the conductor in this driving rain, and walked back to the station-house, getting thoroughly wet, and in consequence became quite sick, and was so for three months. The testimony of the conductor goes to show that the house in question was used as a station-house by his company, and, even on the evidence of the plaintiff, there can be no doubt that it was the duty of the defendant to stop this train at the house, and allow passengers to alight there, notwithstanding the house belonged to another company.—*L. & N. R. R. Co. v. Johnston*, 79 Ala. 436. If the jury believed the testimony we have detailed, they would have been justi-

fied in the conclusion that defendant's conductor, within the range of his employment, willfully refused to move the train back to the station, and willfully compelled the plaintiff to alight in a driving rain several hundred yards from any shelter, so incumbered with her child and baggage as to be unable to protect herself, and necessitating exposure to the elements while walking this distance.    We can not hesitate to affirm that this misconduct on the part of defendant's employé, with knowledge of the situation, was such a willful wrong, committed in such reckless disregard of the necessarily injurious consequences to the plaintiff, as authorized the jury to punish the defendant therefor by the imposition of exemplary damages.—*N. O. J. & G. R. R. Co. v. Hurst,* 36 Miss. 660, 668-9 ; *Wilkinson v. Searcy,* 76 Ala. 176; *A. G. S. R. R. Co. v. Frazier,* at present term.

2.    The most casual reading of the complaint suffices to demonstrate that, while each of its counts avers defendant's wrong and negligence in failing in the first instance to stop its train at Wheeling, neither of them bases plaintiff's claim for damages on that omission of duty, but, on the contrary, they each seek to recover for damages resulting from the refusal of the conductor to return to the stopping-place, and the consequent necessity, accentuated by the expressed directions of the conductor, for plaintiff to alight beyond the station, "in a hard and drenching rain," and to walk back through the rain to the point at which she should have been set down. One or more of the requests for instructions involved a construction of the complaint confining the recovery to damages sustained in consequence of a failure to stop in the first instance, and for this reason were properly refused.

3.    Evidence that plaintiff had her infant in her arms when she alighted from the train was objected to, and is made the basis of an assignment of error here.    The position of appellant in that regard is untenable.    Manifestly this testimony legitimately tended to aggravate the willful wrong of the conductor in requiring the plaintiff to get off in the rain at the considerable distance from any shelter shown in the case; and this whether regard is to be had to the infant *per se,* or the mother's natural solicitude for it, or whether it be regarded only as one of the impediments which disabled the plaintiff from protecting herself in some measure from the rain.

4.    The position taken in some of the charges requested for the defendant and refused, that there could be no recovery under the first or second counts, unless force was used by the conductor in getting plaintiff off the car—those counts averring that she was "put off," and "compelled to get off," respect-

ively—is untenable.  If she alighted in consequence of the implied refusal of the conductor to return to the station, to avoid being carried on, and in obedience to the direction of the conductor to do so, she acted under compulsion which was the equivalent of being put off, or compelled to get off; and the court properly charged the jury that the allegations in this regard did "not necessarily equal or mean the application of force to remove the plaintiff from said train."

5.  It is no doubt true, as asserted in some of the charges requested for defendant, that persons who "apply for and receive transportation on freight trains are not entitled to the comforts and conveniences usually furnished passengers on passenger trains;" but that proposition has no bearing on any issue of fact in this case.   No injury is claimed, or was sustained, by reason of any difference there may be in the "comforts and conveniences usually furnished passengers" on these different classes of trains.   The wrong and injury counted on resulted from a failure to transport the plaintiff from Jonesboro to the depot at Wheeling, with or without certain comforts and conveniences, and in compelling her to alight at a distance from the point at which she had contracted to be set down; and there can be no sort of doubt that whether the vehicle used by the carrier to perform the contract of carriage be of one or the other character hypothesized, its duty to set the passenger down at the end of the journey is precisely the same.   These charges were abstract, and well refused on that ground.

6.   There are respectable authorities which appear to hold, that exemplary damages can not be awarded when the actual injury is purely nominal; the theory being that, as exemplary damages are laid in conservation of the interests of society, which for this purpose are considered "as blended with the interests of the individual," where the individual is injured only nominally, or not at all in fact, though his rights are violated, "the interests of society have virtually nothing to blend with," and hence, "the individual having but a nominal interest, society can have none," &c.—*Stacey v. Portland Pub. Co.,* 68 Me. 287.   This view is specious, but, we apprehend, not sound.   The true theory of examplary damages is that of punishment, involving the ideas of retribution for willful misconduct, and an example to deter from its repetition.   The position of the Supreme Court of Maine can be sustained in principle, it seems to us, only by assuming that which is manifestly untrue, namely, that no act is criminal which does not inflict individual injury capable of being measured and compensated for in money.   Many acts denounced as crimes by our statutes, or by the common law, involve no pecuniary injury to

the individual against whom they are directed, and which, while the party aggrieved could not recover damages, as compensation beyond a merely nominal sum, are yet punished in the criminal courts, and may also be punished in civil actions by the imposition of "smart money;" and on the same principle, acts readily conceivable which involve malice, willfulness, or wanton and reckless disregard of the rights of others, though not within the calendar of crimes, and inflicting no pecuniary loss or detriment measurable by a money standard on the individual, yet merit such punishment as the civil courts may inflict by the imposition of exemplary damages. And upon these considerations the law is, and has long been, settled in this State, that the infliction of actual damage is not an essential predicate to the imposition of exemplary damages.—*Parker v. Mise*, 27 Ala. 480; *W. U. T. Co. v. Henderson*, 79 Ala. 510; *A. G. S. R. R. Co. v. Huddleston*, 32 Ala. 218. See, also, 1 Suth. on Dam. 748. The charges requested by the defendant, to the effect that actual damage must be shown before punitive damages could be recovered, were therefore properly refused.

Charge No. 8, refused to defendant, was misleading when referred to plaintiff's testimony. It tended to induce the jury to the conclusion that, if no actual force was employed by the conductor to put the plaintiff off the train, she left it voluntarily, and this notwithstanding she may have acted under the compulsion resulting from the conductor's failure and implied refusal to move the train back to the station, and from his direction to passengers to alight where the car stood. There was no error in its refusal.

7. Charges 9 and 10, requested by defendant, were argumentative, in that they direct the jury to look to certain facts as tending toward certain conclusions. That numbered 9, moreover, is subject to the same objection taken to No. 8 *supra*—its tendency is to mislead the jury; and that numbered 10 is bad for the further reason, that it confines the right of recovery to injury resulting from defendant's negligence in passing the station, when, as we have seen, the wrong and injury really complained of consisted in a failure to move the train back to the stopping-place, and the consequent necessity plaintiff was under to alight and walk back in the rain.

Charge 11, requested for defendant, was properly refused, because not supported by any tendency of the testimony. There is no evidence in this record to the effect that "plaintiff could have been cured of the sickness in ten days," &c., as hypothesized in this request.

[Meeks v. Garner.]

The rulings of the court on charges not above referred to by number are all considered in the general propositions of law we have announced. The record is free from error, and the judgment is affirmed.