280 So.2d 745

LOCH RIDGE CONSTRUCTION COMPANY, INC., a corp., and Art Rice Realty Co., Inc., a corp.

v.

A. J. BARRA and Lorraine E. Barra.

S.C. 133.

Supreme Court of Alabama.

July 19, 1973.

William L. Irons, Birmingham, for appellants.

Corretti, Newsom, Rogers, May & Calton, Birmingham, for appellees.

HARWOOD, Justice.

In the suit below the plaintiffs, A. J. Barra and his wife Lorraine E. Barra, sought damages because of the alleged fraud practiced upon them by the defendants Loch Ridge Construction Company, Inc., and Art Rice Realty Company, Inc., in the sale of a house sold by Art Rice Realty Company which house was constructed by Loch Ridge.

It was averred that the defendants represented that the house had been built in a good and workmanlike manner and in accordance with plans and specifications as approved by the Veterans Administration and the Federal Housing Administration, whereas the house had not been built in a good and workmanlike manner nor in accordance with either the plans and specifications for the house nor in accordance with the plans and specifications approved by the Veterans Administration or the Federal Housing Administration.

The plaintiffs claimed damages of $25,000.00, punitive damages included.

A jury trial resulted in a verdict for the plaintiffs, damages being assessed at $37,500.00. On motion of the plaintiffs the amount of damages was reduced to $25,000.00.

The defendants filed a motion for a new trial, which was overruled after the filing of a remittitur by the plaintiffs of $10,000.00, as ordered by the court.

The defendants thereafter perfected this appeal.

In the hearing below, Mrs. Barra testified that while looking for a home she chanced upon the Loch Ridge subdivision. There she met Mrs. Betty Powers, a sales representative for Art Rice Realty Company who showed her the house in question located at 3454 Loch Ridge Trail. Mrs. Powers assured her, in response to her questions, that this house was well built and would be in perfect condition when moved into, and that all workmanship and materials were of the best grade. Mrs. Powers further stated that the house had been built according to the Veterans Administration's and Federal Housing Administration's specifications and that the Veterans Administration did the inspecting on the house, and that the house carried a full

year warranty covering all defects in the house.

Later, her husband accompanied her to the house where they saw Mrs. Powers. On this occasion, Mr. Barra asked Mrs. Powers specifically if the house was built according to Veterans Administration and Federal Housing Administration specifications and she assured him it was so built. Mrs. Powers told them they were getting an excellent home because it would be a model home in the "Parade of Homes." Art Rice, President of Art Rice Realty Company, also told them at the closing of the sale that they were fortunate to get this house as it was going to be a model home.

At a meeting to close the sale, Art Rice, and Ralph Roberts, then President of Loch Ridge Construction Company, both stated that the house was built according to Veterans Administration and Federal Housing Administration specifications, that it was inspected by Veterans Administration, that the house would be in perfect condition when the Barras moved in.

Mrs. Barra further testified that at no time was she or Mr. Barra showed any plans or specifications, nor did either of them know of any plans or specifications other than what they had been told by Mrs. Powers, Mr. Rice, and Mr. Roberts. According to Mrs. Barra, it was more than a year after they moved into the house that they became aware that they could obtain the plans and specifications of the house from the Veterans Administration.

The sale of the house was completed on 28 August 1969, the purchase price being $30,500.00. The next day the Barras moved into the house.

Mr. Barra's testimony was corroborative of Mrs. Barra's as to the representations made by Mrs. Powers, Art Rice, and Ralph Roberts. Mr. Barra further testified that it was in reliance upon these representations that the house was purchased.

At the time of the closing of the sale, the Barras were given a warranty of completion to the effect that construction of the house was in substantial conformity with plans and specifications approved by the Federal Housing Commissioner or the Veterans Administrator. The warranty also provided that it was in addition to, and not in derogation of all other rights the purchaser might have under any other law or instrument. This warranty was executed by Loch Ridge Construction Company.

Shortly after moving in, and continuing, many defects began to appear in the house. Mr. Barra would write letters to Art Rice Realty Company and Loch Ridge concerning the defects. The air conditioning system did not cool the house and made a lot of noise; the kitchen cabinets were warped and nicked; the vanity in the upstairs bathroom had to be taken out and redone; in the spring of 1970, leaks developed in the roof; in July 1970, the basement became flooded by leakage from the condensation hose on the air conditioner; in late August of 1970, the dishwasher came loose from the wall and the kitchen floor became spongy from leakage and the floor tiles came loose in a considerable area; also in the fall of 1970, a water closet in the "middle bathroom" came loose and water flooded the bathroom, and basement; and the driveway cracked.

The above are but a few of the problems the Barras were beset with. We will not list them all.

Mr. Barra testified that though he had written Mr. Art Rice and Mr. Roberts several letters concerning the defects in the house, he did not know at the time of writing these letters that the matters about which he complained were in fact departures from the plans and specifications for the house, as he had never been shown any plans and specifications by anyone.

In October 1970, he wrote the Veterans Administration in Montgomery inquiring if

he could obtain plans and specifications for his house. Being informed he could obtain such plans from the Veterans Administration upon the payment of $14.00, he forwarded this amount to the Veterans Administration and received the plans and specifications in October 1970. It was then he became aware that the house had not been built according to the plans and specifications.

Two registered engineers, Mr. James Ray Spence, and Mr. Andrew Payne, were employed individually and separately by Mr. Barra to make an inspection of his house in relation to the plans and specifications.

Mr. Payne testified he examined the house as to its conformity to the plans and specifications for its construction, and also as to whether its construction conformed to the minimum building requirements of the Veterans Administration and the Federal Housing Administration.

Mr. Payne testified that the combined air conditioning and heating unit was completely inadequate to properly cool and heat the house, and the ducts and vents were too small. The heating and cooling system conformed to neither the plans and specifications nor the minimum building requirements of the Veterans Administration or the Federal Housing Administration. This defect could be corrected only by installing a new heating and cooling system, including new ducts and vents.

The attic was improperly insulated. While the specifications called for four inches of insulation, portions of the floor of the attic were bare, while about an inch of insulation was on other portions, and probably four or five inches in the corners. The plans called for a louver to be installed on the rear of the house, but this louver was missing. The ventilation in the attic was nil, with the collection of hot air resulting. Even had a proper sized cooling system been installed, it could not have adequately cooled the house without ventilation in the attic.

The specifications called for panelling in the kitchen, but the kitchen was not panelled. Also, a stainless steel sink was called for but an enamel sink had been installed. Certain cabinets called for in the specifications had not been installed in the kitchen.

The joists had not been fastened to each other as called for in the specifications.

The board and batten work above the brick work on the outside of the house had been installed improperly as had the entrance doors. In some cases finishing nails had been used instead of flat headed nails. The boards would pull off of the finishing nails with warping.

Mr. Payne also noted a complete absence of foundation drains as required by the minimum building requirements of the Federal Housing Administration. Such condition resulted in an excess of moisture, mildew, and dampness in the lower portion of the house.

In short, Mr. Payne testified that in many instances the house was not constructed according to the plans and specifications, nor in compliance with the minimum building requirement of the Veterans Administration and the Federal Housing Administration, and in many instances the house was not constructed in a workmanlike manner.

In Mr. Payne's opinion, the costs of correcting the various defects and variances which he found would be $10,275.00, according to an itemized breakdown he had prepared during his inspections.

Mr. James Ray Spence, the second consulting engineer employed by the Barras to inspect the house in reference to its compliance with the plans and specifications for the house, and with the minimum building requirements of the Veterans Administration and the Federal Housing Administration, testified as to his inspection of the house and its variances from the above mentioned standards. Mr. Spence's

testimony was substantially corroborative of Mr. Payne's testimony in regard to the variances and deficiencies between the house and the said plans, specifications, and minimum standards of the Veterans Administration and the Federal Housing Administration. It was Mr. Spence's opinion, however, that the costs of bringing the house into compliance would be $7,468.00.

Mr. Spence further testified that the defects he found and the variances from the plans and specifications could not be determined by an average buyer without having plans and specifications before him.

Richard L. Harris of the Alabama Gas Corporation, testified that the computation of air conditioning load factor for the Barra house prepared by his company was based on an attic fan being installed, and the house being properly insulated.

For the defense, Mrs. Powers, and Mr. Ralph Roberts testified that they had made no representations to the Barras concerning the house other than it was Veterans Administration inspected, and that it would be on the Parade of Homes. Mr. Roberts testified that the house was Veterans Administration inspected.

In this connection, Mr. Gene Haynes testified that he was a construction analyst with the Veterans Administration. His duties are to check plans submitted to the Veterans Administration as to substantial conformance with minimum standards. Mr. Haynes did not personally make any compliance inspection on the Barra house; but such inspections were made by a fee basis compliance inspector, the fee being paid by the builder.

Mr. Haynes testified that a final completion inspection was made on the Barra house on 22 August 1969, which inspection report did not reveal any deficiencies.

On 13 February 1970, Mr. Haynes personally inspected the Barra house. He reached the conclusion that certain items which were the responsibility of the builder, approximately 35 in number, were either not in substantial conformity with the minimum building requirements of the Veterans Administration nor with the plans and specifications of the house, or were done in an unworkmanlike manner.

Mr. Noland Tucker, a witness for the defendants, testified that he was construction foreman for Loch Ridge Construction Company until April of 1970. He was present at the first inspection and at the move-in inspection made by the Veterans Administration. According to Mr. Tucker, certain deficiencies revealed at the move-in inspection were corrected to the Barras' satisfaction.

On cross-examination, Mr. Tucker testified he was not familiar with all the minimum building standards of the Federal Housing Administration at the construction of the Barra house. He did not know whether the Barra house had been built in accordance with its plans and specifications. He said he could not produce the original set of plans used on the job site. He always carried the plans and specifications back to the office of Art Rice, to Mr. Ralph Roberts, on completion of a job.

Mr. Tucker further testified he had known Art Rice, Jr., for seven years; that Mr. Rice was the owner of both the Art Rice Realty Company, and Loch Ridge Construction Company, and as far as he was concerned Art Rice Realty Company and Loch Ridge Construction Company were one and the same.

Mr. Ed Crowe, a witness for the defendants, testified that he was carpenter superintendent and later construction superintendant for Loch Ridge Construction Company. He testified he was responsible for correcting certain items in the construction of the Barra house brought to his attention by the Veterans Administration inspector, and that he made these corrections. Upon receiving a complaint from the Barras that the air conditioning was not working properly, he installed a ventilator in the roof. Mr. Crowe admitted this ventilator was not in accordance with the

plans and specifications of the Veterans Administration. In fact, the evidence shows that the plans called for horizontal louvers in the gable of the house, and the ventilator apparently referred to by Mr. Crowe consisted of a few holes drilled in the gable. On cross-examination, he testified his attempt to correct the leaks in the roof were not in accordance with the plans and specifications for the house.

Mr. Crowe further testified that at the time he was working on the Barra house no specifications were attached to the plans nor did he ever see any specifications on the job site, nor any minimum property standards required by the Veterans Administration or Federal Housing Administration.

Appellant's assignments of error 38, 39, and 40, are grouped for argument. They assert error because of the court's action in overruling the demurrers to the respective three counts of the complaint.

Under these grouped assignments, appellant first argues that the alleged fraud was averred as a conclusion only, without stating facts out of which the fraud arose.

■ Each of the counts avers in substance that the defendants represented to the plaintiffs that the house in question was constructed in a good and workmanlike manner, was in perfect condition, and constructed in compliance with plans and specifications submitted to and approved by the Federal Housing Administration and the Veterans Administration, and that such representations were false. Such averments sufficiently state the facts out of which the fraud arose.

Appellants next argue that the court erred in sustaining the demurrer to each count in that each shows on its face that it was barred by the statute of limitations of one year.

■ Even though a complaint *at law* shows on its face that the cause of action is barred by the statute of limitations, such

defense cannot be asserted by demurrer. It must be specially pleaded. Tonsmeire v. Tonsmeire, 281 Ala. 102, 199 So.2d 645. This is the reason that otherwise a plaintiff would thereby be prevented from pleading an exception which would prevent the bar. Tutwiler Coal, Coke & Iron Co. v. Wheeler, 149 Ala. 354, 43 So. 15.

The record shows that the appellants did in fact file pleas specifically raising the matter of the statute of limitations. The appellees' demurrers to the said pleas were overruled. In this connection the minute entry recites: "Plaintiffs join issue on defendant's pleas."

Both parties presented evidence as to whether fraud was practiced by the appellants or the appellees, and as to when the fraud was discovered by the appellees.

■ Thus the question of when the cause of action occurred was a question of fact for the jury, and under the tendencies of appellees' evidence, the jury was warranted in finding that the fraud was not discovered by the appellees until a date within one year of the filing of the suit, thus bringing the question within the influence of Section 42, Title 7, Code of Alabama 1940. We find no merit in assignments of error 38, 39, and 40.

Under a group of some twenty-one assignments of error, the appellants have averred error in the denial of their motion for a new trial on the basis that the damages awarded were excessive. It is appellants' contention that only compensatory damages could be awarded.

Counsel for appellants reach this conclusion by a bootstrap operation of referring only to evidence offered by the appellants, and ignoring the evidence contradictory thereof presented by the appellees.

The code sections controlling cases of fraud and deceit are Sections 108, 110, and 111 of Title 7, Code of Alabama 1940.

In Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37, this court wrote:

"In the often cited case of Caffey v. Alabama Machinery & Supply Co., 19 Ala.App. 189, 96 So. 454, it is pointed out that Section 108 is but a reflection of the general law on the subject of fraudulent misrepresentation, and that fraud being alleged, and established by the evidence, punitive damages may be recovered only if the fraud was malicious, oppressive, or gross, made with knowledge of its falseness, (or so recklessly made as to amount to the same thing), and made with the purpose of injuring the plaintiff. To the same effect see Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909; Treadwell Ford Inc. v. Leek, 272 Ala. 544, 133 So.2d 24; J. Truett Payne Co. v. Jackson, 281 Ala. 426, 203 So.2d 443."

 Evidence presented by the appellees tended to establish actual damages of either $10,275.00 (Payne's testimony) or $7,468.00 (Spence's testimony). It is obvious therefore that a part of the damages awarded must be considered as punitive damages. The trier of fact is authorized to award punitive damages where legal malice, willfulness, or a reckless disregard accompanies the invasion of the rights of another. Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484. The imposition of punitive damages in cases of fraud and deceit is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing similar wrongs. Treadwell Ford Inc. v. Leek, 272 Ala. 544, 133 So.2d 24.

██ Furthermore, the court clearly and adequately instructed the jury as to their authority to award punitive damages, and the conditions under which they might, or might not, award such damages. Counsel for the appellants at the conclusion of the court's oral constructions announced he had no exceptions to take to the instructions. Thus the instructions of the court, consonant with the theory on which the case was tried, to which the appellants assented by their silence, became the law

of the case by which the jury was bound, and even had the instructions been erroneous, which they were not, the matter could not be made a predicate for error by first taking notice thereof on a motion for a new trial. See Lee v. Gidley, 252 Ala. 156, 40 So.2d 80.

From an examination of the evidence, it is our conclusion that the jury was authorized to assess punitive damages in this case.

By another group of some fourteen assignments of error, the appellants assert error in the action of the court in overruling their motion for a new trial on the basis that the suit was barred by the statute of limitations of one year.

Section 42, Title 7, Code of Alabama 1940, provides:

"In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

It is true that defects appeared in the house shortly after the Barras moved into it. Many of these were of a minor nature. The Barras knew that the cooling and heating system did not satisfactorily cool or heat the house, but had no way of knowing that such poor functioning was due to the inadequate size of the cooling and heating machine and ducts, the lack of ventilation in the attic and the absence of proper insulation, rather than to some maladjustment in the machine. The same might be said of defects in the installation of the roof, since leaks did not develop until the spring of 1970.

The appellants contend that the Barras were imprudent in not discovering that the house was not built in compliance with the plans and specifications for its construc-

tion, as approved by the Veterans Administration, since the appellants had duplicate plans and specifications which the Barras could have seen had they asked. By the same token it would appear that good faith would have impelled the appellants to disclose the existence of these plans and specifications instead of maintaining a complete silence during all the period of the Barras' travail imposed on them in connection with the massive defects, many of them hidden, resulting from the poor construction of the house.

It was not until the Barras obtained the plans and specifications from the Veterans Administration in the latter part of August 1970, that they discovered the variances between the construction of the house as called for in such plans and specifications, and as it was actually constructed. Suit was filed on 3 November 1970.

■ Where there is evidence reasonably affording an inference as to whether a plaintiff was defrauded, and if so, when the plaintiff discovered the fraud, the case is one for the trier of fact. Letson v. Mutual Loan Society, 208 Ala. 285, 94 So. 288. In Birmingham Bond Co. v. Lovell, 5 Cir., 81 F.2d 590, it is stated:

> "The province of the jury [is] to resolve the conflict in the evidence and to determine whether, on all the evidence, the statute of limitations created a bar to the suit."

■ The question now being considered was made an issue under the pleadings, evidence was received pro and con thereon, and the court in its instructions to which no exceptions were reserved, instructed the jury fully and in detail as to the legal principles applicable to such findings as they might make on the evidence. After a careful consideration of all the evidence, it is our view that we would not be justified in concluding that the jury was not warranted in the conclusions reached.

In one set of assignments of error, the appellants have grouped some 21 assignments for argument. Clearly, one or more of these assignments are unrelated to the others and are without merit. Counsel for appellees insist that we pretermit consideration of all of this group of assignments. We also note, however, that counsel for appellants have an additional group of nine assignments which would appear to be the same as some of those in the 21 group, though the unrelated assignments are not included in this last group of nine assignments, all of which appear to be sufficiently related to justify their being argued jointly.

The points raised in this latter group relate to the action of the trial court in denying appellants' motion for a new trial on the ground that one of the jurors, James C. Murphy, during the voir dire examination of the jury venire by counsel for the appellees, had failed to make any response to a question as to whether any of the jurors had a speaking or nodding acquaintance with Ed Crowe. This same question was also addressed to the jurors concerning a number of other named persons.

At the hearing on the motion for a new trial, Edgar P. Crowe testified that James C. Murphy, a juror in the Barra case, was his neighbor, and had been since August 1964. Their children are friends and play together. Their wives are also friends.

Sometime in 1970, he had occasion to saw up a tree that had fallen over the driveway of Mr. Murphy. Mr. Murphy and one of his sons was present. The son asked whose saw it was and he replied it belonged to "the Loch Ridge Contractors, Art Rice." A general conversation then ensued as to "where I worked and what I done and what type of house we built." In a "general sense" Mr. Murphy asked what kind of house Loch Ridge built and, "I told him basically we built a good house, the frame was good. Naturally there was short cuts to save money. I think every builder does it." At this time, Mr. Crowe said he stated he was having some problems with some houses in Loch Ridge sub-

division—"in a general sense it was mentioned."

On cross-examination, Mr. Crowe testified that the Barra house was not mentioned. He had no further conversation with Mr. Murphy concerning Loch Ridge from that time on. He first knew Mr. Murphy was on the jury when he testified as a witness for about twenty minutes on the third day of the trial in 1972.

Mr. Crowe further testified that Mr. Murphy is a friend of his, they socialize together, and have a good relationship. He knows Mr. Murphy to be an honorable man.

On redirect examination, Mr. Crowe testified that in his conversation with Mr. Murphy in 1970, in explaining what was meant by taking short cuts, was that: "We will take short cuts in paint, don't buy the best paint, just like everybody else. Its * * * every builder I have been around takes short cuts to save a little money."

On recross-examination, Mr. Crowe testified that he had not testified at the trial as to short cuts, but he had told Mr. Murphy that they took short cuts "* * * we don't buy the most expensive paint, the most expensive paneling. There are four or five grades of paint you can buy." He sees Mr. Murphy pretty regularly. He comes down and plays football and basketball with Mr. Murphy and his children.

The doctrine of our cases prior to the opinion of this court in Freeman v. Hall, 286 Ala. 161, 238 So.2d 330, was to the effect that the failure of prospective jurors to properly respond to questions propounded to them on their voir dire examination entitled the movant to have his motion for a new trial granted. Sanders v. Scarvey, 284 Ala. 215, 224 So.2d 247, and Leach v. State, 31 Ala.App. 390, 18 So.2d 285, are illustrative of the cases enunciating this doctrine.

Upon further consideration of this doctrine in Freeman v. Hall, supra, it was observed that while the statements of the doctrine to be found in the earlier cases are correct as broad generalizations, they should not be automatically or mechanically applied without due consideration of the factual background of the particular case in which the point arises.

In a thorough review of the question and of former cases of this court and of the then Court of Appeals of Alabama, as well as the cases of our sister states on the subject, this court summarized its conclusions as follows:

"To re-emphasize, we say that we will review the trial court's ruling on motion for new trial predicated on jurors' improper answers to (or failure to answer) questions propounded on voir dire only for abuse of discretion in its determination as to probable prejudice."

The questioning of Mr. Crowe by counsel for appellants at the hearing on the motion for a new trial, was directed toward showing the close friendship between Crowe and the juror Murphy, as well as the friendship between their two families. This same theme is emphasized in appellants' argument in brief. Having established this cordial relationship between Crowe and the juror Murphy, it seems anomalous that a contention should be made that any bias or prejudice against the appellants might flow from Murphy's acquaintanceship with Crowe. While such situation might be tenable had bad feelings existed between Crowe and Murphy, we see no basis for concluding under the evidence presented that the appellants were probably injured in any of their substantial rights in this instance. Apparently the experienced and able trial judge so concluded, and we find no justifiable basis upon which to conclude that he abused his discretion in the premises.

Under assignments of error Nos. 54, 55, 56, 60, 74, 75, and 77, appellants contend that the court erred in denying them a full cross-examination of appellees' expert wit-

ness, Spence. The record in this regard merely reflects that after cross-examining Mr. Spence extensively relative to a cement sidewalk placed in the rear of the house, which was not called for in the plans or specifications, and further cross-examining him as to whether Bermuda grass had been planted all the way to the rear line of the lot rather than only 15 feet as called for in the plans and specifications, counsel for appellants then asked Mr. Spence if he had looked at the livingroom, to which Mr. Spence replied he had.

Counsel for appellees then objected to the question on the grounds that counsel for appellant was attempting to exonerate the appellants by showing that in some respects the house met, or more than met, the plans and specifications. The court then sustained the objection observing he did not see the materiality of the question. It is to be observed, however, that the question had already been answered at the time of the court's action.

In substance, the counts of the complaint averred fraudulent representation by the appellants that the house had been built according to plans and specifications approved by the Federal Housing Administration and the Veterans Administration, and that these representations were false. The appellants filed pleas of the statute of limitations, and a plea of the general issue. Under the plea of the general issue, the issue presented was whether in the construction of the house there were substantial variances from plans and specifications and not whether in some aspects the house had been constructed in accordance with such plans.

Counsel for appellants did not pursue this line of questioning further after the court's ruling.

Under the issue made by the pleadings, the court was correct in his observation as to the materiality of the evidence which counsel had pursued by his previous questions, and further, as the matter is presented under the state of the record, it is difficult to see that anything is presented for our review. We hold that appellants can take nothing under these assignments.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and McCALL, JJ., concur.