[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1379 
This is an appeal by the defendant from a judgment for the plaintiff based upon a jury award of $25,000. We affirm.
The facts of this case are reported in Old Southern LifeInsurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). On the first trial, we reversed the decision and remanded the case for deficiencies pertaining to two of the three claims for relief.
Thereafter the defendant amended its answer by alleging additional defenses: (1) By paying Six Hundred Thirty-Seven and 20/100 Dollars into court for the plaintiff, it discharged its duty under its policy for the confinement of Etta W. Woodall from May 27, 1973 to June 16, 1973, and June 30, 1973 to July 10, 1973; (2) Its payment into court of all money due under its policy barred plaintiff's cause of action; (3) Not guilty; (4) A denial of any false representations to plaintiff or of ever intending not to pay claims of Etta W. Woodall; (5) That the two claims in question were denied because of a pre-existing heart condition, and that the defendant determined in good faith that the admissions of May 27, 1973 and June 30, 1973 were primarily related to the pre-existing heart condition; and (6) That plaintiff knowingly gave false information to defendant which was relied upon by defendant in issuing the policy, and therefore, the policy was void. Following the filing of this amended answer, defendant filed a motion for summary judgment, based upon the pleadings and upon the payment into court of what defendant termed the full sum of money due under the policy. This motion was denied. *Page 1380 
Then, with the trial court's permission, the plaintiff amended his complaint. It is helpful to recall that in the original complaint the second theory of relief charged fraud of the company by making fraudulent and false representations which induced plaintiff to pay premiums on the policy after the claims were denied. In his amended complaint plaintiff averred that between November 1, 1972 (the date of the contract) and prior to September 11, 1973 (the date of the denial letter pertaining to the second claim) the defendant negotiated with the plaintiff "concerning the continuation of the contract of insurance in force and the payment by MR. WOODALL of renewal premiums for the contract." It charged that:
. . . . .
 20. At that time Defendant COMPANY represented to MR. WOODALL that the Defendant COMPANY would pay to MR. WOODALL substantial sums of money toward the costs of medical expenses incurred by MR. WOODALL resulting from the Hospitalization of MRS. WOODALL for pneumonia and other conditions.
 21. The representations made by Defendant COMPANY were false and Defendant knew they were false.
 22. MR. and MRS. WOODALL believed the representations made by Defendant COMPANY and in reliance upon them paid the renewal premiums and purchased the renewed contract of insurance.
 WHEREFORE, Plaintiff demands Judgment against Defendant COMPANY in the sum of $1,000,000.00 for compensatory and punitive damages.
Without attempting to fully repeat what was stated in our earlier opinion, it was plaintiff's theory then, and in this second trial, that having evidence upon which the company might have been able to terminate the policy on the ground of false statements in the application, the company based its denial of benefits on an entirely different reason, and with such knowledge fraudulently induced the plaintiff to pay premiums when it had no intention of paying any claims of Mrs. Woodall.
The defendant on appeal argues in a number of his designated issues that the trial court erred because he instructed the jury upon a different cause of action than that "approved" by this Court on the first appeal. Such an argument misconstrues our language. What we stated, and all that we stated, was:
 We hold, therefore, that the second theory sued on stated a claim upon which relief could be granted. There was at the very least a scintilla of evidence to support that claim. The trial court, therefore, did not err in submitting the second claim to the jury.
The fact that we found no error in the trial court's holding which found that the second theory stated a cause of action upon which relief could be based was not the equivalent of an "approval" of an allegation which denies other similar allegations in a subsequent trial. Nothing in that language remotely suggested any limitation upon the plaintiff's freedom to state whatever viable action he might prove, and indeed, under Rule 15, ARCP, that right is provided him. Moreover, we have compared the allegations of the causes of action on fraud alluded to in our original opinion, and contained in both the original and the amended complaints, and we find that they allege the same cause of action. See Rudman v. Hooks, 252 Ala. 280, 40 So.2d 866 (1949); Tit. 7, §§ 108, 110, 111, AlabamaCode. This was the cause of action upon which the trial court gave an extensive instruction to the jury, which we deem correct:
 What do we mean by `fraud?' I might define it generally to mean there must first have been a willful representation on the part of the defendant in this case in order to charge the defendant with legal fraud. First, you must find or reasonably believe from the evidence there was a willful misrepresentation to Mr. Woodall at the time this letter, Plaintiff's Exhibit No. 4, was written to him; further, that at the time they wrote this letter which is the basis for that misrepresentation, *Page 1381 
that they did so with the intent to induce Mr. Woodall, after receiving this letter, to continue to pay premiums under the terms of the policy; further, there would have to be found as a fact in this case that Mr. Woodall did in fact pay additional premiums and that he was induced to make such payments in reliance on the false, willfully false, misrepresentation made in this letter to him; and that in doing so he acted to his own injury, that he did in fact pay out additional premiums; that the company either had a right never to collect because they could have canceled it, or they could have offered a return of his premiums, if they wished to do so, but that he did in fact pay out some additional premiums before that thing finally was allowed to terminate. You would have to be satisfied, then, at least of that as a very minimum before a person charged with legal fraud could be found guilty of such legal fraud. It has got to be a willful misrepresentation of a material fact as being true. It would be for you to say whether or not this letter does willfully misrepresent a true fact. And you have got to as a further result, as I said, find that after the receipt of that letter Mr. Woodall was induced to make his next premium payment or payments, if in fact he made any such payments — but that is a question of fact for you — and that he did act so to his own injury and he had no knowledge that this statement was false in any way.
Next, the defendant contends that the trial court erred by removing from the jury's consideration the fact that the defendant ". . . has now, ever has, or ever will make any payment under the claim filed by Mr. Woodall, either the first time or the last time." It should be pointed out that the trial court, in that connection, added: "This is not an action to recover certain sums which the plaintiff contends were due under the contract entered into between these parties." And later, after defining the tort, added:
 I have allowed the fact that tender of payment has been made, however, to come before you for the purpose of your consideration as to whether or not there has actually been any fraud on the part of the defendant.
Describing these instructions as imposing a novel theory which also led to the erroneous refusal of three of its requested charges, the defendant maintains that this position effectively cuts off its only true defenses, full payment under the contract, and denial of claim under the contract's provisions. We cannot agree with defendant's contentions. Payment of or satisfaction under the contract is not a defense to an action for fraud after that right of action has accrued. Berry v.Wooddy, 16 Ala. App. 348, 77 So. 942; cert. den., 201 Ala. 698,78 So. 988 (1918).
Defendant has cited us to the case of Pihakis v. Cottrell,286 Ala. 579, 243 So.2d 685 (1971), as authority for the proposition that the payment into court by the defendant should have been considered by the jury in "mitigation of damages," and that it was error for the trial court to fail to so instruct in his oral charge.
It is true that an amount which a party receives as compensation for his injury is applicable to reduce his damages recoverable from a tortfeasor. Anderson v. Kemp, 279 Ala. 321,184 So.2d 832 (1966). Such proof does not, however, in any way defeat the victim's right to recover his damages. So that in this case, the plaintiff was entitled to recover any actual damages claimed and sustained by the fraud committed upon him, notwithstanding the payment into court of sums based upon thecontract out of which the fraud arose. His acceptance of those sums, to be sure, would have mitigated any recovery he would have been entitled to based upon breach of contract. But the mere tender of those sums in satisfaction of the defendant's contract obligation did not mitigate plaintiff's right to recover any compensatory damages claimed and proved for fraud, or punitive damages should they have been applicable. Pihakis
itself lends support for this view. In that case, the defendant contended that after *Page 1382 
the alleged fraud had occurred, the plaintiff had received
deeds and a check covering their recording costs, which would place the plaintiff in the same position she occupied before the alleged misrepresentation took place. While acknowledging that this evidence was admissible to reduce the plaintiff'srecovery, the court noted that it would not defeat plaintiff's right to recover. Ibid., 286 Ala. at 585, 243 So.2d 685. Here, plaintiff's compensatory damages recoverable, if alleged and proved, would consist of the money he was induced to part with, his premium payments, and punitive damages should malice, wilfulness or aggravation have been shown. Thus, the tender by the defendant of any sum under a supposed satisfaction of its contract obligation, and of which plaintiff testified he was unaware, would not mitigate the plaintiff's damages claimed on account of defendant's fraud. By tendering the sum of money into court, therefore, accompanied by the allegation that it was all the money due under its policy, defendant was not mitigating plaintiff's damages, but apparently was simply seeking to reduce the amount of damages it might be caused to pay by virtue of the plaintiff's claim of fraud.
Moreover, our examination of the record reveals that of the fifty-eight jury charges requested by the defendant, not one considered the subject of mitigation of damages. But in an excess of caution we have also searched the record for any additional or corrective requests. Rule 51, ARCP, accordingly, would preclude consideration of that subject on appeal. The record shows that after the oral charge was completed, counsel for the defendant discussed one aspect of it with the trial court, but made no objection to the lack of any charge on mitigation of damages, nor did counsel request any additional charge on that subject before the jury retired.
Appellant also maintains that the trial court erred in submitting the issue of compensatory damages to the jury. He also apparently contends that punitive damages should not have been awarded because there was no proof of actual damages.
In his amended complaint, plaintiff alleged that "Mr. and Mrs. Woodall . . . paid the renewal premiums" . . . and demanded judgment "for compensatory and punitive damages." In his pre-trial order, the trial court described the nature of the case:
 Plaintiff claims of the defendant the sum of $1,000,000.00 as punitive damages for false representations which he contends were made to him by the defendant and resulted in inducing the said plaintiff to continue to pay premiums . . .
. . . . .
 . . . defendant further denies that any fraud was committed on its part in continuing to collect any premiums. . . .
This order was made subject to further modification by the court.
The record shows that plaintiff paid a premium in the amount of $72.00 after he received the second letter of rejection from the defendant. In that part of his oral charge to the jury as damages, the trial court stated:
. . . Did they give him the wrong reasons for it? And as a result of giving him the wrong reasons for it, thereafter continued to collect premiums because Mr. Ocie Woodall, in reliance upon that representation, thereafter continued to pay premiums? Those are the damages which would be complained of as it would arise out of the complaint in this case. Did he in fact . . . pay any additional premiums? If so, how much? . . . The only issue insofar as any damages might be concerned, that could even possibly be called compensatory, which are involved, are only such premiums as he paid after this date. . . .
Following completion of his oral instructions, a side-bar conference occurred between court and counsel. Defense counsel objected to that portion of the instruction dealing with compensatory damages:
. . . We feel like the pre-trial order, as well as the statements of counsel in his closing statement, limited this case strictly to punitive damages, . . . *Page 1383 
 THE COURT: I think under the evidence I would have to let it go on [in], if they can find any fact — maybe one $70.00 payment was made, I don't know as to that, based on the evidence.
. . . . .
 . . . His only compensatory damages under this are such premiums as were paid after he got the letter.
Upon the pleadings and the evidence we believe the trial court was correct in his instruction to the jury respecting the payment of premiums by the plaintiff after the alleged fraudulent representations. Contrary to the statements of defense counsel who claimed surprise at the claim for compensatory damages, the complaint itself referred to such damages. The plaintiff's evidence proved entitlement to compensatory damages for the one premium payment, and the law allows such a recovery in an action based upon fraudulent representation. Insofar as the pre-trial order was concerned, the plain language of Rule 16 recites: ". . . and such order when entered shall control the subsequent course of the action,unless modified at the trial to prevent manifest injustice."
[Emphasis supplied.] The trial court's action in charging the jury on compensatory damages was consistent with the authority given him by that language.
We agree with the defendant that damage to the plaintiff is an essential element of fraud. Pihakis v. Cottrell, supra. But that damage was shown here by the evidence of plaintiff's payment of the $72.00 premium following the alleged misrepresentations. This proof of actual pecuniary loss from the fraud would support an award of compensatory damages.Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312
(1975); Alabama Great Southern Railroad Co. v. Sellers, 93 Ala. 9,9 So. 375 (1891).
To recover punitive damages in an action based upon fraud and deceit, the plaintiff must prove entitlement to nominal damages, but in such actions nominal damages are equated with actual damages. Ringer v. First National Bank of Stevenson,291 Ala. 364, 281 So.2d 261 (1973). Plaintiff's evidence, as noted above, clearly demonstrated actual damage. He also bears the burden of proving that:
. . . the fraud is of the character described in Alabama Great Southern Railway [sic] Co. v. Sellers, supra [93 Ala. 9, 9 So. 375: `acts . . . which involve malice, wilfulness or wanton and reckless disregard of the rights of others'] . . . [Mid-State Homes, Inc. v. Johnson, supra].
Such an award is discretionary with the jury, acting in response to the enormity of the wrong and the necessity of preventing similar wrongs. Loch Ridge Construction Co., Inc. v.Barra, 291 Ala. 312, 280 So.2d 745 (1973). The trial court's oral charge on the issue of punitive damages correctly stated these principles.
With respect to defendant's refused charges and posttrial motions which dealt with the sufficiency of the evidence, we need only refer to what this Court stated in its opinion on the first appeal:
. . . The failure of the company to base its denial on this ground, and rather its basing the denial on the ground that the condition for which she was hospitalized was one which had occurred less than six months after the policy was issued, and was therefore excluded, is evidence from which the jury could have found that the company fraudulently and with intent to deceive Mr. Woodall continued to accept premiums on the policy, having in its possession from the time the first claim was submitted information which would permit it, on proper proof, to completely terminate all coverage under that policy. This clearly was evidence from which the jury could have found that Mr. Woodall was fraudulently induced to continue paying the premiums on the policy, the company having no intention when it accepted such renewal premium to pay any claims on the policy insofar as Mrs. Woodall's confinements were concerned. . . . *Page 1384 
That was the state of the evidence in this second trial. Accordingly, the case was properly one for the trier of fact.Loch Ridge Construction Co., Inc. v. Barra, supra.
Defendant also complains of a purported error by the trial court in failing to grant a mistrial, or a new trial, based upon improper argument of counsel. As our decisions have expressed on numerous occasions, this is a matter which must be left to the enlightened judgment of the trial court, and we have given his rulings the benefit of presumptions of correctness. St. Clair County v. Martin, 273 Ala. 302,139 So.2d 617 (1962). And to reverse on this ground we must be able to conclude that substantial prejudice has resulted. Adams v.State, 291 Ala. 224, 279 So.2d 488 (1973).
We have considered the twenty-nine record pages of oral argument, and taking into consideration the nature of the action and its evidence, we cannot state that substantial prejudice existed if, indeed, any was shown. Counsel for the defendant contends that the following references made in argument could not be eradicated:
1. That this situation is like Watergate. Now what the record actually shows that plaintiff's counsel stated is:
 The whole thing comes down to this. This letter was written and it cannot be changed because the written pen stays there indefinitely. No big deal. It wasn't at the time. Like Watergate, just a little thing that can be squshed [sic], no problem.
This analogy of the defendant's alleged conduct as a small thing which could not be later changed, to the Watergate scandals, which common knowledge reveals as involving similar deceit, was simply a comment on the nature of the evidence.
2. That Old Southern does not pay its claims. The record reveals this argument by plaintiff's counsel:
. . . But you know and I know that there are insurance companies that you have dealt with and I have dealt with and we deal with every day that pay their claims. We are talking about one company that doesn't. . . .
This also appears to us to be fair comment upon the evidence. Plaintiff's entire theory of action was that the defendant fraudulently refused to pay his claims.
3. That this was a flim-flam. Plaintiff's counsel actually stated: "This man has been the victim of a flim-flam. . . ." That word is defined in Black's Law Dictionary, (4th ed. 1968), p. 768 as ". . . a form of bunco or confidence game. A bunco game is therein defined as "Any trick, artifice, or cunning calculated to win confidence and to deceive, whether by conversation, conduct, or suggestion." Appellant counsel's shock at the use of this word is a personal commendation for him, but its use only calls attention to the range of Machiavellian conduct in this wicked world, and thus to a form of conduct which the jury could have found present in the evidence.
4. That the defendant had a stack more lawyers other than the three present in court. What the record reveals is:
. . . I will take nothing away from these defense lawyers, all three of them, they have done a super job, and they have got a stack more of them back there backing them up.
The trial court sustained objection to this statement, overruled a motion for a mistrial, but admonished the jury to "disregard that statement about `stacked behind,' whatever it may refer to." We cannot conclude on the record that his allusion amounts to substantial prejudice to the defendant.
5. That there was some fiduciary relationship between the parties. This portion of the argument is recorded as follows:
 Now, what are we talking about here? We are not talking about the same thing here as a person who is involved in an automobile accident and makes a claim against a third person — a second person's insurance company. This man is in a fiduciary relationship with the defendant. Now, I mean by a fiduciary relationship — *Page 1385 
 MR. FUNDERBURK: We object to that. That is not a correct statement of the law.
THE COURT: At this point, overruled.
 MR. POPE: This man is in a contractual direct relationship with that defendant. That defendant owes him a high duty. It owes him a much higher duty than an insurance company would owe somebody who had a wreck with one of their insureds, because that party making the claim is a third party, he pays no premium. They are in an adversary position to begin with, they are disagreeing over the amount owed. But in this case that's their insured. That is the man there (indicating) that they have promised to take care of. That is the man, right there, that they are to look after and to give fast, quick, courteous, and fair service to. So we have got a different situation there. . . .
In the context of the case, it is possible that counsel was attempting to describe the factual relationship between the parties arising from their contract, and that this was the reason he used the word "fiduciary." It could have been intended as a comparison, or an illustration. It is not, therefore, a necessary conclusion that his statement was an incorrect statement of law as objecting counsel maintained. In any case, in view of the fact that no reference to any such duty was made by the trial court in his charge on the applicable law to the jury, we fail to ascertain how this equivocal reference could have substantially prejudiced the defendant. Cf. Louisville and N.R. Co. v. Cunningham HardwareCo., 213 Ala. 252, 104 So. 433 (1925).
6. That this is one of the "companies that will take advantage of their power and their position over some poor man with a sixth grade education." The record discloses that counsel stated: ". . . I'm talking about the companies. . . ."
What we have stated in connection with numbers 1, 2, 3 and 5 applies to this part of the argument complained of. Also, considering that the nature of the charge was a deceit, the inquiry into the element of inducement of the victim necessarily would subsume whether he could have been induced. There was evidence of the plaintiff's age, educational background, and inability to read well. In actions for fraud and deceit, great latitude is allowed in the scope of the evidence introduced, Tuscaloosa Truck and Tractor Co. v.Stewart, 37 Ala. App. 279, 67 So.2d 844; cert. den., 259 Ala. 528, 67 So.2d 846 (1953); May v. Strickland, 235 Ala. 482,180 So. 93 (1938), and the argument permitted is determined by the nature of the evidence admissible to prove such an offensive charge. In view of this evidence, together with the nature of the action, we cannot conclude that it was substantially prejudicial to the defendant to permit this argument. Cf.Southern Railway Co. v. Jarvis, 266 Ala. 440, 97 So.2d 549
(1957).
There being no error requiring a reversal, the judgment of the trial court is due to be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.